# United States Court of Appeals for the Federal Circuit

05-1412

MARK BRUCKELMYER,

Plaintiff-Appellant,

v.

GROUND HEATERS, INC.,

Defendant,

and

T.H.E. MACHINE COMPANY,

Defendant-Appellee.

John B. Lunseth II, Briggs and Morgan, P.A., of Minneapolis, Minnesota, argued for plaintiff-appellant. With him on the brief was Michael H. Streater.

Aaron W. Davis, Patterson, Thuente, Skaar & Christensen, P.A., of Minneapolis, Minnesota, argued for defendant-appellee. With him on the brief were Randall T. Skaar and Eric H. Chadwick.

James Moskal, Warner, Norcross & Judd LLP, of Grand Rapids, Michigan, for defendant. With him on the brief was Charles E. Burpee.

Appealed from: United States District Court for the District of Minnesota

Judge Donovan W. Frank

# United States Court of Appeals for the Federal Circuit

05-1412

MARK BRUCKELMYER,

Plaintiff-Appellant,

v.

GROUND HEATERS, INC.,

Defendant,

and

T.H.E. MACHINE COMPANY,

Defendant-Appellee.

———————————————

DECIDED: April 20, 2006

———————————————

Before MICHEL, Chief Judge, LOURIE and LINN, Circuit Judges.

Opinion for the court filed by Circuit Judge LOURIE. Dissenting opinion filed by Circuit Judge LINN.

LOURIE, Circuit Judge.

Mark Bruckelmyer appeals from the decision of the United States District Court for the District of Minnesota granting summary judgment of invalidity of U.S. Patents 5,567,085 and 5,820,301 (the "patents in suit") in favor of Ground Heaters, Inc. and T.H.E. Machine Company (collectively "Ground Heaters"). Bruckelmyer v. Ground Heaters, Inc., No. 02-CV-1761 (D. Minn. May 13, 2005) ("Final Decision"). Prior to the district court's entry of judgment, Bruckelmyer stipulated that if the Canadian patent

application that issued as Canadian Patent 1,158,119 ("the '119 application") were a "printed publication" under 35 U.S.C. § 102(b), it would render the patents in suit invalid on the ground of obviousness. Id., slip op. at 6. Because the court correctly determined that the '119 application, including figures 3 and 4 contained therein, was a "printed publication," we affirm its judgment of invalidity.

BACKGROUND

On July 20, 1995, a patent application that issued as the '085 patent was filed in the U.S. Patent and Trademark Office, naming Mark Bruckelmyer as the inventor. On July 17, 1996, a continuation-in-part application that issued as the '301 patent was filed, also naming Bruckelmyer as the inventor. Both patents disclose a method of thawing frozen ground so that a layer of concrete can be laid on top of the ground. '085 patent, col. 1, ll. 34-51; '301 patent, col. 1, ll. 34-51. According to the patents, in cold weather, the laying of concrete is difficult because it may harden in a non-uniform manner, and concrete laid on frozen ground may later crack due to settling of the ground that thaws in warmer weather. '085 patent, col. 1, ll. 10-26; '301 patent, col. 1, ll. 10-26. In general, the patented methods place rubber hoses on the ground either around a narrow concrete footing form or within a large concrete form. '085 patent, col. 2, l. 25-col. 3, l. 58; '301 patent, col. 2, l. 25-col. 4, l. 15. A liquid that is heated, such as water or antifreeze, is then circulated through the hoses, which thaws the frozen ground and prevents the concrete from hardening too quickly. Id.

On May 7, 1982, over thirteen years before Bruckelmyer filed the applications that issued as the '085 and '301 patents, Norman Young filed an application that issued as Canadian Patent 1,158,119. The '119 patent subsequently issued on December 6,

1983.  The '119 patent discloses a portable heating system that places flexible hoses "in close proximity to objects of various shapes and configurations which would otherwise be difficult to heat."  '119 patent, abstract.  Like the patents in suit, the '119 patent discloses a method of heating structures by having preheated liquid flow through flexible hoses.  Also, similar to the patents in suit, the '119 patent states that the "primary object of this invention is to provide an improved method of applying heat to fresh concrete which has been placed in pre-constructed formwork during extreme cold weather."  Id.  To illustrate an application of the invention, the '119 patent provides drawings of the claimed heating system being used to heat a beam.  The patent further notes that the "system is suitable for applying heat to other subjects and is not necessarily confined to use in relation to concrete placement.  Other typical uses are: . . . thawing frozen ground."  Id., at p. 2.  Relevant to this appeal, the '119 patent omits certain drawings that were contained in the application as filed, viz., two drawings illustrating the use of the disclosed heating system to thaw frozen ground ("figures 3 and 4").  Figures 3 and 4 are not in the issued patent because they were cancelled during prosecution.  Nonetheless, they still remain in the '119 patent's file wrapper.

Moving forward to July 15, 2002, Bruckelmyer filed a complaint against Ground Heaters, one of his former licensees, for infringement of the patents in suit.  In its responsive pleading, Ground Heaters filed a counterclaim asserting that the patents in suit were invalid.[1]  On December 19, 2002, Ground Heaters filed a motion for summary judgment of invalidity based on, inter alia, figures 3 and 4 of the '119 application.  The

---

[1]  It is unclear from the record whether Ground Heaters claimed that its products did not infringe the patents in suit.  The answer to that question, however, is not necessary for us to decide this appeal.

05-1412                                3

court denied Ground Heaters' motion for summary judgment of invalidity upon finding a genuine issue of material fact regarding whether a person of ordinary skill in the art would have been enabled by figures 3 and 4 to practice the technology claimed by the patents in suit without undue experimentation. Bruckelmyer v. Ground Heaters, Inc., No. 02-CV-1761, slip op. at 8 (D. Minn. June 16, 2003) ("Initial Decision").

In reaching its decision to deny summary judgment, the court determined that the '119 application was a "printed publication" under § 102(b). Id. The court noted that the '119 patent and its application were available for public inspection at the Canadian Patent Office in Hull, Quebec, more than one year before the priority date of the patents in suit. Id. The court also determined, albeit in a conclusory manner, that "the contents of the file wrapper [were] sufficiently accessible to the relevant and interested public as to constitute a printed publication for purposes of § 102(b)." Id.

In view of the court's determination that figures 3 and 4 of the '119 application constituted § 102(b) prior art, Bruckelmyer filed a stipulation in the court conceding that those figures rendered the claims of the patents in suit invalid. Final Decision, slip op. at 6. In doing so, Bruckelmyer removed from dispute any question of fact as to whether those figures were enabling to a person of ordinary skill in the pertinent art. Ground Heaters filed a renewed motion for summary judgment of invalidity, which the court granted on May 13, 2005. Id. Bruckelmyer timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).[2]

## DISCUSSION

---

[2] Ground Heaters, Inc. and T.H.E. Machine Company were both appellees when this appeal was originally filed. Since then, Bruckelmyer and Ground Heaters have settled and Ground Heaters is no longer part of this appeal. The appeal between Bruckelmyer and T.H.E. Machine Company, however, remains pending.

05-1412                                    4

We review a district court's grant of summary judgment <u>de</u> <u>novo</u>, reapplying the same standard used by the district court. <u>Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.</u>, 149 F.3d 1309, 1315 (Fed. Cir. 1998). Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). "Whether an anticipatory document qualifies as a 'printed publication' under § 102 is a legal conclusion based on underlying factual determinations." <u>Cooper Cameron Corp. v. Kvaerner Oilfield Prods.</u>, 291 F.3d 1317, 1321 (Fed. Cir. 2002). Where there is no disputed issue of material fact, however, the question whether a particular reference is a "printed publication" is one of law, which we review <u>de</u> <u>novo</u>. <u>In re Cronyn</u>, 890 F.2d 1158, 1159 (Fed. Cir. 1989).

The single legal issue in this appeal is whether figures 3 and 4 of the '119 application were "printed publications" under 35 U.S.C. § 102(b). Bruckelmyer argues that the district court erred in concluding that they were. For a reference to be a "printed publication," Bruckelmyer asserts, it must be "publicly accessible," as that term has been used in our prior decisions. Bruckelmyer contends that a patent application located in a foreign patent office, <u>e.g.</u>, the '119 application, is not "publicly accessible" just because it is laid open for inspection by the general public during the relevant prior art time frame. Relying on our decisions in <u>In re Klopfenstein</u>, 380 F.3d 1345, 1350 (Fed. Cir. 2004), and <u>In re Cronyn</u>, 890 F.2d at 1161, Bruckelmyer asserts that for a prior art reference to be considered "publicly accessible," it must either (1) be published to those interested in the art for a sufficient amount of time to allow them to "captur[e], process[ ] and retain[ ] the information conveyed by the reference, or (2) those interested must be able to locate the material in a meaningful way."

Bruckelmyer asserts that the '119 application did not meet either criterion, and thus it was not "publicly accessible." According to Bruckelmyer, there was no evidence in the record indicating that the contents of the file wrapper were disseminated, as the '119 file wrapper was only located in the Canadian Patent Office in Hull, Quebec, and there were no copies known to have been made and sent elsewhere during the prior art period. Moreover, Bruckelmyer contends that a person of ordinary skill in the art interested in the subject matter of the patents in suit, viz., a method for thawing frozen ground by using flexible hoses and heated liquid, would not have been able to locate figures 3 and 4 because the Canadian Patent Office did not index or catalogue the '119 application. Nor was there a printed abstract of the '119 application that was classified and published to allow one skilled in the art to locate figures 3 and 4, according to Bruckelmyer. Finally, Bruckelmyer argues that the '119 patent itself would not have guided a person of ordinary skill in the art to locate figures 3 and 4 because the figures were "removed" from the application during prosecution.

Ground Heaters responds by arguing that, although the '119 application was not formally indexed, a person of ordinary skill in the art would have been able to locate the figures contained in the '119 application through the published '119 patent. According to Ground Heaters, the following statement contained in the '119 patent would have led one skilled in the art to the '119 application, and hence to figures 3 and 4: "[the claimed system] is suitable for applying heat to other objects and is not necessarily confined to use in relation to concrete placement. Other typical uses are: . . . thawing frozen ground." Moreover, Ground Heaters notes that the '119 patent was indexed and catalogued according to its subject matter, and the application was in the file of the

patent in the patent office; ipso facto, the application was also, as a practical matter, indexed and catalogued.

We agree with the district court that the '119 application and the figures 3 and 4 associated with it, was "publicly accessible," and thus that it was a "printed publication" under 35 U.S.C. § 102(b). The "printed publication" provision of § 102(b) "was designed to prevent withdrawal by an inventor . . . of that which was already in the possession of the public." In re Wyer, 655 F.2d 221, 226 (CCPA 1981). Whether a given reference is a "printed publication" depends on whether it was "publicly accessible" during the prior period. Id. A given reference is "publicly accessible"

> upon a satisfactory showing that such document has been disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence, can locate it and recognize and comprehend therefrom the essentials of the claimed invention without need of further research or experimentation.

Id. (quoting I.C.E. Corp. v. Armco Steel Corp., 250 F. Supp. 738, 745 (S.D.N.Y. 1966)). Although Ground Heaters does not assert that the '119 application with figures 3 and 4 was actually disseminated during the relevant prior art time frame, Bruckelmyer has conceded that figures 3 and 4 of the application were in the patent file and were enabling. Thus, the only question that remains for us to answer is whether a person of ordinary skill in the art interested in the subject matter of the patents in suit and exercising reasonable diligence would have been able to locate the '119 application. If the answer to that question is "yes," then the '119 application, including figures 3 and 4, was "publicly accessible" and the patents in suit are invalid.

Controlling in our determination whether the '119 application was "publicly accessible" is our predecessor court's decision in In re Wyer. In that case, an Australian patent application was laid open for public inspection and an abstract of the application was published by the Australian Patent Office more than two years before the filing date of the corresponding U.S. patent application at issue in that case. Id. at 222. The existence of a published abstract that would have allowed one skilled in the art exercising reasonable diligence to locate the foreign patent application and the fact that the application was classified and indexed in the patent office, were central to the Wyer court's conclusion that the application was "publicly accessible." The court noted, "[g]iven that there is no genuine issue as to whether the application was properly classified, indexed, or abstracted, we are convinced that the contents of the application were sufficiently accessible to the public and to persons skilled in the pertinent art to qualify as a 'printed publication.'" Id. at 226.

In this case, the published '119 patent is even more of a roadmap to the application file than the abstract was in Wyer. As Ground Heaters observed, the '119 patent states that a possible use of the claimed invention is to thaw frozen ground by circulating heated liquid through flexible hoses—the same use contemplated by the methods claimed in the patents in suit. Given such a pertinent disclosure, we conclude that no reasonable trier of fact could find that a person of ordinary skill in the art interested in the subject matter of the patents in suit and exercising reasonable diligence could not locate the '119 application, including figures 3 and 4 contained

therein.[3]  Indeed, it would be inconsistent to determine that one skilled in the art could have located a foreign patent application based on information in a published abstract, as our predecessor court found in In re Wyer, but not here, where there was an issued patent.  After all, an issued patent is presumably more informative of the content of its application file than a mere abstract of the patent application.  Moreover, there is no genuine dispute that the '119 patent was classified and indexed, as the abstract was in Wyer, further providing the roadmap that would have allowed one skilled in the art to locate the '119 application.  Because no reasonable trier of fact could have found that the '119 patent did not provide sufficient information to allow a person of ordinary skill in the art to locate the '119 application, including the figures contained therein, we agree with the district court and conclude that that application was "publicly accessible," and hence an invalidating § 102(b) prior art reference.

Bruckelmyer's reliance on In re Cronyn to argue that the '119 application was not "publicly accessible" is misplaced as that case is factually distinguishable.  In In re Cronyn, we determined that the student theses at issue were not meaningfully catalogued or indexed, and thus they were not "publicly accessible."  890 F.2d at 1161.  The significance of whether these theses were meaningfully catalogued or indexed was whether one skilled in the art could locate them.  In this case, however, it does not matter whether the '119 application was catalogued or indexed "in a meaningful way" because the '119 patent was indexed and could serve as a "research aid."  Id.  And, as

---

    [3]  We do not express an opinion regarding the unusual situation where the prior art reference at issue is contained in a foreign file wrapper, but otherwise bears little relation to the subject matter of the issued and published patent.

05-1412                                          9

we explained above, no reasonable trier of fact could find that the '119 patent did not contain sufficient disclosure to serve that purpose.

Equally unpersuasive is Bruckelmyer's argument that figures 3 and 4 were "removed" from the application during prosecution, and thus a person of skill in the art would not have looked past the '119 patent in searching for the subject matter of the patents in suit. As a matter of undisputed fact, the '119 patentee did not physically remove figures 3 and 4 from the file wrapper, but merely cancelled the subject matter figures from the patent during prosecution. The figures were thus still in the file, although they did not appear in the issued patent. The declaration from Bruckelmyer's Canadian patent law practitioner explains that when subject matter is cancelled during prosecution a replacement page may be put in front of the page containing the cancelled matter, but the page containing the cancelled original matter still remains in the file wrapper. Moreover, for the reasons that we articulated above, it does not matter that figures 3 and 4 do not appear in the '119 patent because no reasonable trier of fact could find that there was not sufficient disclosure in the patent to allow one skilled in the art to locate the figures contained in the application.

## CONCLUSION

For the aforementioned reasons, the district court's decision granting summary judgment of invalidity of the patents in suit in favor of Ground Heaters is affirmed.

## AFFIRMED

# United States Court of Appeals for the Federal Circuit

05-1412

MARK BRUCKELMYER,

Plaintiff-Appellant,

v.

GROUND HEATERS, INC.,

Defendant,

and

T.H.E. MACHINE COMPANY,

Defendant-Appellee.

LINN, Circuit Judge, dissenting.

I respectfully dissent from the majority's decision to affirm the district court's grant of summary judgment of invalidity of the patents in suit. Because the district court erred in holding that the patent application that issued as Canadian Patent No. 1,158,119 ("the '119 application") was a "printed publication" under 35 U.S.C. § 102(b), I would vacate the district court's summary judgment of invalidity and remand for further proceedings.

The majority distinguishes In re Cronyn, 890 F.2d 1158 (Fed. Cir. 1989) by concluding that the issued '119 patent serves as an index to the '119 application. Ante at 9. ("[I]t does not matter whether the '119 application was catalogued or indexed 'in a meaningful way' because the [issued] '119 patent was indexed. . . ."). The majority elaborates that the issued '119 patent is even more of a roadmap to the application file

than an abstract, inferring that the issued patent can take the place of a classified and indexed abstract, and, relying on our precedent in In re Wyer, 655 F.2d 221 (C.C.P.A. 1981), contends that the indexed patent makes the '119 application "publicly accessible." Ante at 8.

In my opinion, it is not entirely sound to view the issued '119 patent as a roadmap to the underlying file history. An abstract, which is similar in many respects to a library index card, is a brief statement of the contents of something else; i.e., the more extensive text to which it refers. It is intended to serve as a tool to steer researchers to the content of a larger and more comprehensive work. The abstract contained in an issued patent, for example, is a summary of the technical information contained in the specification. On the other hand, the printed text of an issued patent—including the abstract, written description, and claims—is not necessarily looked to as a summary or index of the underlying file history. While it is commonplace for parties to examine patent file histories for guidance on matters of claim interpretation, surrender, estoppel, disclaimer, or disavowal, researchers normally expect the text of printed patents to correspond to and be coextensive with the applications from which they have been issued. In that sense, the text of an issued patent does not generally serve to guide researchers to the file history for a more expansive disclosure of the described invention, and it certainly does not lead researchers to the file history for disclosure of subject matter not described in the issued text.

Moreover, even if an issued patent may be considered a form of index to the underlying file history, there is nothing in the text of the issued '119 patent to suggest that a disclosure of structure for implementing the "thawing frozen ground" use will be

found in the underlying '119 application.  The fact that an additional drawing, disclosing additional structure, is present in the application file is a matter of sheer happenstance nowhere indicated in the issued patent.  For this reason, it is my view that, as in Cronyn, the anticipatory drawings at issue in this case are "not accessible to the public because they have not been cataloged or indexed in a meaningful way."  See Cronyn, 890 F.2d at 1161.

Public accessibility has been the touchstone by which a prior art reference satisfies the purposes of 35 U.S.C. § 102(b).  See In re Wyer, 655 F.2d at 226 (stating that the entire purpose of the "printed publication" bar was to "prevent withdrawal" of disclosures "already in the possession of the public" by the issuance of a patent).  In Klopfenstein, this court discussed that the requirement of public accessibility can be satisfied under a variety of conditions, including when there has been a meaningful distribution, indexing, or display of the material to the public interested in the art.  See generally In re Klopfenstein, 380 F.3d 1345 (Fed. Cir. 2004).  In Klopfenstein, we held that a reference was made sufficiently publicly accessible because, despite that it was not indexed and copies were not distributed to the public, it was prominently displayed for several days to a wide variety of interested viewers who were free to take notes or photographs, and copying would have been a simple undertaking.  Id. at 1350.  In this case, in addition to not being meaningfully indexed, as discussed above, no copies were known to have been made or distributed during the critical period, and the '119 application was available for viewing only at the Canadian Patent Office in Hull, Quebec.

For the foregoing reasons, it is my view that the limited reference in the issued '119 patent to "thawing frozen ground" did not put the public in possession of the canceled drawings in the '119 application. Because the district court erroneously determined that the '119 application, including the canceled drawings, was a "printed publication," I would vacate the district court's grant of summary judgment and remand.