# United States Court of Appeals for the Federal Circuit

---

**GOPRO, INC.,**
*Appellant*

**v.**

**CONTOUR IP HOLDING LLC,**
*Appellee*

---

2017-1894, 2017-1936

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2015-01078, IPR2015-01080.

---

Decided: July 27, 2018

---

MARK A. LEMLEY, Durie Tangri LLP, San Francisco, CA, argued for appellant. Also represented by ADAM R. BRAUSA; KARINEH KHACHATOURIAN, Duane Morris LLP, Palo Alto, CA.

PAUL MICHAEL SCHOENHARD, McDermott, Will & Emery LLP, Washington, DC, argued for appellee. Also represented by IAN BARNETT BROOKS, NICOLE JANTZI.

---

Before REYNA, WALLACH, and HUGHES, *Circuit Judges.*

REYNA, *Circuit Judge.*

GoPro, Inc. appeals from final written decisions of the Patent Trial and Appeal Board in two *inter partes* review proceedings. In the proceedings, the Board found that the petitioner, GoPro, did not demonstrate that the challenged claims are unpatentable as obvious. The Board based this decision on its finding that a certain GoPro catalog is not a prior art printed publication. We disagree. We vacate and remand for further proceedings consistent with this opinion.

BACKGROUND

A. The '954 patent and '694 patent

Contour IP Holding LLC owns U.S. Patent Nos. 8,890,954 ("the '954 patent") and 8,896,694 ("the '694 patent"). The patents share a common specification that generally relates to and describes action sport video cameras or camcorders that are configured for remote image acquisition control and viewing.[1] '954 patent, col. 1 ll. 16–17. According to the patents, the claimed device uses global positioning system (GPS) technology to track its location during recording and a wireless connection protocol, such as Bluetooth, to "provide control signals or stream data to [the] wearable video camera and to access image content stored on or streaming from [the] wearable video camera." *Id.* at col. 1 ll. 53–62, col. 16 ll. 50–60. The patents further describe that "[w]hen recording video or taking photographs in a sports application, [a] digital video camera . . . is often mounted in a location that does not permit the user to easily see the camera." *Id.* at col. 19 ll. 35–37. The digital camera includes wireless communication capability to allow another device, such as a smartphone or tablet, to control camera settings in real

---

[1]    Neither the claim terms nor the claimed inventions are at issue in this appeal.

time, access video stored on the camera, and act as a "viewfinder" to preview what the camera sees. *Id.* at col. 19 l. 38–col. 20 l. 47.

Both the '954 and '694 patents claim priority to a provisional application filed on September 13, 2010. Thus, the one-year critical date is September 13, 2009.

## B. Proceedings Before the Board

GoPro petitioned for *inter partes* review ("IPR") of the '954 and '694 patents on April 20, 2015. GoPro challenged the patentability of claims 1–30 of the '954 patent and claims 1–20 of the '694 patent on obviousness grounds, relying on a 2009 GoPro sales catalog ("the GoPro Catalog") as prior art in each petition. The GoPro Catalog discloses a digital camera linked to a wireless viewfinder/controller that allows for a user preview before recording. The Board instituted both IPRs on October 28, 2015, as IPR2015-01080[2] and IPR2015-01078.

In its decisions to institute, the Board found that GoPro made a threshold showing that the GoPro Catalog is prior art. In reaching this determination, the Board concluded that a person of ordinary skill in the art would have had at least a bachelor's degree in computer science, electrical engineering, or a similar discipline, and some experience creating, programming, or working with digital video cameras, such as point of view ("POV") action sports video cameras. Critical to its decision, the Board credited a declaration from GoPro employee, Damon Jones, relating to the distribution of the GoPro Catalog. Mr. Jones worked at GoPro from 2008 to 2016 and participated in various trade organizations relevant to GoPro's business. This included Tucker Rocky Distributing ("Tucker Rocky"), a trade organization focused on action

---

[2]    The Board instituted the IPR as to claims 1, 2, and 11–30 of the '954 patent. J.A. 499.

sports vehicles as well as related apparel, parts, and accessories.

In his declaration, Mr. Jones testified that Tucker Rocky holds an annual dealer trade show, which he attended in Fort Worth, Texas, from July 23 through July 27, 2009, on GoPro's behalf. Mr. Jones also testified that at the 2009 show, there were approximately 150 vendors and more than 1,000 attendees, including actual and potential dealers, retailers, and customers of portable POV video cameras. Mr. Jones stated that he manned the GoPro booth at the show, where the GoPro Catalog was displayed, and that he personally distributed the GoPro Catalog to attendees. Attached to Mr. Jones's declaration, GoPro provided the catalog, a vendor list and map of the Tucker Rocky 2009 show, and email records supporting Mr. Jones's statements. The declaration from Mr. Jones also included testimony that GoPro continued to make the GoPro Catalog available to GoPro's actual and potential customers, dealers, and retailers through its website, direct mail, and other means of distribution. During the proceedings, GoPro submitted a supplemental declaration from Mr. Jones to support statements from his first declaration.

In its Patent Owner Responses, Contour argued that GoPro had not demonstrated that the GoPro Catalog was a prior art printed publication. To support its argument, Contour submitted two pieces of evidence—a screenshot from Tucker Rocky's website from 2009 and a Facebook webpage for the 2013 Tucker Rocky Dealer Show. The 2009 website screenshot explained that Tucker Rocky is a wholesale distributor that does not sell to the public. The 2013 Facebook page stated that the 2013 Tucker Rocky Dealer Show was open to dealers but not the public. Contour did not depose Mr. Jones.

In its final written decisions, the Board found that the GoPro Catalog did not qualify as a prior art printed

publication under 35 U.S.C. § 102(b). *GoPro, Inc. v. Contour IP Holding LLC*, IPR2015–01078, Paper No. 54, at 28 (PTAB Oct. 26, 2016) ("*'694 FWD*"); *GoPro, Inc. v. Contour IP Holding LLC*, IPR2015–01080, Paper No. 55, at 28 (PTAB Oct. 26, 2016) ("*'954 FWD*"). Specifically, the Board concluded that GoPro had not met its burden to show that the GoPro Catalog was disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art and exercising reasonable diligence could have located it. *See '694 FWD,* at 28; *'954 FWD,* at 27–28. Because all the instituted grounds were based on the GoPro Catalog, the Board found that GoPro had not demonstrated that the challenged claims of the '954 and '694 patents were unpatentable under 35 U.S.C. § 103.

GoPro timely appealed from these final written decisions to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

Whether a reference constitutes a printed publication under 35 U.S.C. § 102(b)[3] is a legal conclusion based on underlying factual determinations. *See In re Lister*, 583 F.3d 1307, 1311 (Fed. Cir. 2009). The issue of whether a reference represents a printed publication is a question of law that is reviewed *de novo*. *See In re Klopfenstein*, 380 F.3d 1345, 1347 (Fed. Cir. 2004). The Board's findings of fact are reviewed for substantial evidence. 5 U.S.C. § 706(2)(E).

---

[3]   Because the '954 and '694 patents each have an effective filing date before the effective date of the Leahy-Smith America Invents Act ("AIA"), references are to the pre-AIA version of 35 U.S.C. § 102. *See* Pub L. No. 112-29, 125 Stat. 284 (2011); 35 U.S.C. § 102 (2006).

Section 102(b) provides that a person shall be entitled to a patent unless the invention was described in a printed publication more than one year prior to the date of application for patent in the United States. The printed publication rule is based on the principle that once an invention is in the public domain, it can no longer be patented by anyone. *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1348 (Fed. Cir. 2016).

We have interpreted § 102 broadly, finding that even relatively obscure documents qualify as prior art so long as the relevant public has a means of accessing them. *See, e.g.*, *Jazz Pharm., Inc. v. Amneal Pharm., LLC*, Nos. 17-1671, -1673, -1674, -1675, -1676, -1677, -2075, --- F.3d ----, slip op. at 11–22, 2018 WL 3400764, at \*5–9 (Fed. Cir. July 13, 2018). For example, we have determined that a single cataloged thesis in a university library was "sufficient[ly] accessible to those interested in the art exercising reasonable diligence." *In re Hall*, 781 F.2d 897, 900 (Fed. Cir. 1986). Subsequently, we explained that "[a]ccessibility goes to the issue of whether interested members of the relevant public could obtain the information if they wanted to" and "[i]f accessibility is proved, there is no requirement to show that particular members of the public actually received the information." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1569 (Fed. Cir. 1988). Accordingly, "[a] reference will be considered publicly accessible if it was 'disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence, can locate it.'" *Blue Calypso*, 815 F.3d at 1348 (quoting *Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1350 (Fed. Cir. 2008)).

The parties do not dispute any of the facts or evidence presented by GoPro regarding the distribution of its catalog. In addition, there is no dispute that the Tucker Rocky Dealer Show occurred before the critical date of the

'954 and '694 patents. *See* 35 U.S.C. § 102(b). The principal issue on appeal is whether the GoPro Catalog was sufficiently accessible as contemplated under § 102(b). GoPro argues that the Board erred by finding that Mr. Jones's declarations and corroborating evidence were insufficient to meet its burden of establishing that the GoPro Catalog was publicly accessible. We agree.

The Board found all the evidence presented by GoPro credible,[4] but explained that GoPro did not provide evidence that the dealer show was advertised or announced to the public, such that a person interested and ordinarily skilled in the art from the public would have known about it. The Board relied on the evidence presented by Contour, which consisted of statements about the dealer show being open exclusively to dealers and not the general public. *See* J.A. 422–23. Specifically, the Board found that a person ordinarily skilled in the art would not be interested in the dealer show because it was not an academic conference or camera industry conference, but rather a dealer show for action sports vehicles like motorcycles, motorbikes, ATVs, snowmobiles, and watercraft. *See '694 FWD*, at 26–27.

We disagree with the Board's conclusion that the evidence presented by GoPro failed to satisfy the § 102(b) requirements. The case law regarding accessibility is not as narrow as the Board interprets it. The Board focused on only one of several factors that are relevant to determining public accessibility in the context of materials distributed at conferences or meetings. The Board cited

---

[4] *See '694 FWD*, at 23 n.9 ("Patent Owner did not cross-examine Mr. Jones, and does not point to any reason to doubt the veracity of his testimony. The only issue, therefore, is whether his testimony and cited exhibits are sufficient for Petitioner to meet its burden to prove that the GoPro Catalog is a prior art printed publication.").

no cases where we have strictly held that the expertise of the target audience is dispositive of the inquiry of accessibility. *Cf. Medtronic v. Barry*, 891 F.3d 1368, 1382 (Fed. Cir. 2018) ("The expertise of the target audience can be a factor in determining public accessibility. But this factor alone is not dispositive of the inquiry." (citations omitted)). Rather, our case law directs us to also consider the nature of the conference or meeting; whether there are restrictions on public disclosure of the information; expectations of confidentiality; and expectations of sharing the information. *Id.* at 1382–83.

Trade shows are not unlike conferences—a trade show is directed to individuals interested in the commercial and developmental aspects of products. If one desires to examine certain new products on the market, attending a trade show involving identical or similar products is a good option. Mr. Jones testified that Tucker Rocky holds an annual trade show that draws thousands of attendees. In 2009, GoPro participated in the Tucker Rocky Dealer Show as a vendor and had a demonstration booth at the show. Mr. Jones personally attended the show on behalf of GoPro and operated the demonstration booth. He testified that there were over 150 vendors, 1,000 attendees, and that GoPro displayed and distributed hundreds of copies of the GoPro Catalog to attendees at the show without restriction.[5]

The fact that the dealer show is focused on action sports vehicles is not preclusive of persons ordinarily skilled in the art from attending to see what POV digital

---

[5] Mr. Jones also submitted a supplemental declaration testifying that the GoPro Catalog was made available through GoPro's website, direct mail, and email. J.A. 5000–01. We do not reach whether this testimony standing alone was sufficient to meet GoPro's burden, as we find that distribution at the dealer show was sufficient.

cameras were being advertised and displayed. As described in the patents, a primary purpose of POV cameras is for use on vehicles in extreme action environments, such as the ones advertised at the Tucker Rocky Dealer Show.[6] *See, e.g.*, '954 patent, col. 12 ll. 42–45 ("Because base mount 130 can be flexible, it can be attached to a variety of surfaces such as, for example, the surfaces of helmets, snowboard decks, skis, fuel tanks, windows, doors, and vehicle hoods."); *id.* at col. 16 ll. 39–49 ("Digital video camera 10 is an all-in-one, shoot and store digital video camcorder and is designed to operate in extreme weather conditions and in a hands-free manner. Digital video camera 10 is wearable and designed for rugged environments (water, heat, cold, extreme vibrations), and the Contour 1080P™ system includes application mounts 126 to attach to any person, equipment, or vehicle. The internal components of digital video camera 10 may be silicon treated, coated, or otherwise insulated from the elements, keeping digital video camera 10 operational, no matter the mud, the dirt, the snow, and the rain.").

Although the trade show was only open to dealers, there is no evidence or indication that any of the material disseminated or the products at the show excluded POV action cameras, or information related to such cameras. Contrary to the Board's conclusion, the attendees attracted to the show were likely more sophisticated and involved in the extreme action vehicle space than an average consumer. Thus, it is more likely than not that persons ordinarily skilled and interested in POV action

---

[6]    Contour's screenshot of the Tucker Rocky website states that "[Tucker Rocky Distributing] stock[s] and sell[s] over 75,000 items for street bikes, off-road motorcycles and ATVs, as well as all the *accessories* and apparel needed by the people that ride them." J.A. 5644 (emphasis added).

cameras were in attendance or at least knew about the trade show and expected to find action sports cameras at the show. While the Board found that GoPro did not provide any evidence as to what products the companies at the trade show make, GoPro was not the only manufacturer of POV action cameras. The vendor list provided with Mr. Jones's declaration listed a number of vendors who likely sell, produce and/or have a professional interest in digital video cameras. J.A. 4319, 4323–24.[7] This is especially true in light of the evidence that Tucker Rocky is a trade organization directed to action sports vehicles *and accessories* related thereto. J.A. 4319.

The Board concluded that the GoPro Catalog was not a printed publication because the Tucker Rocky Dealer Show was not open to the general public[8] and GoPro failed to provide evidence that someone ordinarily skilled in the art actually attended the dealer show. But, the standard for public accessibility is one of "reasonable diligence," *Blue Calypso,* 815 F.3d at 1348, to locate the information by "interested members of the *relevant* public." *Constant*, 848 F.2d at 1569 (emphasis added). A dealer show focused on extreme sports vehicles is an obvious forum for POV action sports cameras. And although the general public at large may not have been aware of the trade show, dealers of POV cameras would

---

[7] Such vendors include Ducks Unlimited, whose members have an interest in recording their hunting experiences, J.A. 4323, as well as helmet manufacturers, such as Scott USA and Scorpion Helmets, which have a particular interest in helmet-mounted cameras, J.A. 4324. Such vendors are a part of the community related to the devices sold by GoPro and its competitors.

[8] The Board relied on evidence that Tucker Rocky is a membership organization and wholesale distributor that does not sell to the public. J.A. 24–25.

encompass the relevant audience such that a person ordinarily skilled and interested in POV action cameras, exercising reasonable diligence, should have been aware of the show. Additionally, the GoPro Catalog was disseminated with no restrictions and was intended to reach the general public. Based upon Mr. Jones's testimony, the evidence provided by GoPro regarding the Tucker Rocky Dealer Show, and the evidence of the Tucker Rocky Distributing website, we conclude that GoPro met its burden to show that its catalog is a printed publication under § 102(b).

Because the Board refused to accept the GoPro Catalog as a printed publication, it did not consider the merits of GoPro's obviousness claims. *See* J.A. 61 ("[Since GoPro] has not established that the GoPro Catalog is a prior art printed publication under 35 U.S.C. § 102(b), . . . we determine that [GoPro] has not shown, by a preponderance of the evidence, that the challenged claims are unpatentable based on [GoPro's] asserted grounds."). On remand, the Board shall consider the GoPro Catalog as prior art and evaluate the merits of GoPro's unpatentability claims. *Cf. Lister*, 583 F.3d at 1317 (vacating and remanding obviousness determination based on erroneous consideration of printed publication).

## CONCLUSION

We vacate the Board's decision that claims 1–20 of the '694 patent and claims 1, 2, and 11–30 of the '954 patent are not unpatentable and remand for further proceedings consistent with this opinion.

## **VACATED AND REMANDED**

### COSTS

No costs.